HENRY CLAIR, appellant,

*v.*

CHARITY ANN TERHUNE, respondent.

1. An appeal from a final decree brings before the appellate court all interlocutory orders or decrees involving the merits.

2. On appeal from the final decree, the appellate court will decide whether a decree of reference, prescribing the limits of the accounting, be right. But items clearly within the limits of the reference, not allowed by the master, where exceptions to the report have not been filed, will not be considered.

*Mr. G. Ackerson, jun.,* for the appellant.

*Mr. C. H. Voorhis,* for the respondent.

The opinion of the court was delivered by

PARKER, J.

The bill in this cause was filed by Charity Ann Terhune against Henry Clair, the Mutual Life Insurance Company of New York, James F. Preston, and Garret R. Herring, sheriff of the county of Bergen.

The bill charges that complainant, being owner in fee of certain real estate at Binghamton, in the state of New York, was induced by her husband to exchange the same for lands in the township of Englewood, in this state; that her husband and his brother-in-law, Henry Clair, by importunity and pertinacity, while her mind was weak and without power to resist, succeeded in obtaining from her a deed to Clair for the Englewood property, without giving her any consideration therefor; and that, after the deed was thus obtained, Clair, without her knowledge or consent, mortgaged the premises to the Mutual Life Insurance Company of New York, to secure the payment of

$3,000, and subsequently to James F. Preston, to secure the further sum of $4,000.

The bill also charges that complainant never received any part of the moneys alleged to have been obtained upon said mortgages, and had not derived any benefit therefrom.

It was further charged that Preston had commenced foreclosure proceedings, and obtained a decree and execution, under which the sheriff had advertised the premises for sale.

The prayer of the bill was, that the said mortgages be decreed to be void as against complainant; that Clair and wife be directed to reconvey the premises to her, free from all encumbrances, and for general relief.

Henry Clair, the only answering defendant, denied the material allegations of the bill, and alleged that the complainant, being of sound mind, without solicitation on his part, applied to him to aid her to raise money to pay a debt she owed to one Phelps upon the exchange of the Binghamton property for the Englewood premises, and also to satisfy certain judgments against her husband; that, to aid her in making such payments, he loaned her the sum of $2,500; that, in response to her proposition, he accepted from her a conveyance of the Englewood property, to enable him to give a mortgage thereon for the purpose of raising money to repay himself the sums he had advanced at her request; that, with complainant's consent, he first executed a mortgage on the premises to one Hardenbergh, for the sum of $2,500, with the proceeds of which he repaid himself the moneys he had advanced; that, subsequently, with her consent, he executed a mortgage on the same premises to the Mutual Life Insurance Company of New York, for the sum of $3,000, and with the proceeds paid the Hardenbergh mortgage, and some claims against complainant's husband, at her request.

The answer is not under oath.

The cause was referred to one of the advisory masters of the court of chancery, who, after hearing testimony and argument, advised a decree.

By that decree (made on the 26th day of March, 1880), the mortgage given to the Mutual Life Insurance Company of New

York was declared valid, and the bill, as against that company, was dismissed ; the Preston mortgage was set aside ; the defendant, Clair, was directed forthwith to reconvey to complainant the Englewood property, subject only to the mortgage of the insurance company ; Clair was ordered to account to complainant for all moneys borrowed by him on the premises ; and that, upon such accounting, he should be credited with all moneys necessarily and legally required to be, and actually paid by him, by the contract under which the exchange of the Binghamton and Englewood properties was made, taxes by him paid on the Englewood property, and all necessary expenses in prosecuting said loans, advertising and taking care of that property.

Additional evidence was taken before the master who was directed to state the account, and on the 4th day of June, 1881, his report was made, in which he charged Mr. Clair with the $3,000 borrowed and received by him from the Mutual Life Insurance Company of New York, and credited him with various sums, amounting to $1,411.05, leaving a balance due from Clair (including interest to the date of the master's report) of $2,247.42.

No exceptions to the report were filed, and a decree of confirmation was signed. The final decree directing Mr. Clair to pay the money found due to complainant, and awarding execution to collect same, was signed on the 4th day of June, 1881. It is from this decree that the appeal was taken.

Upon the argument, objection was made to that part of the decree of August 26th, 1880, which limits the credits to be given appellant in the accounting.

It was suggested that, on appeal from the final decree, this court could not consider the interlocutory decree ; but the contrary has been repeatedly held.

Where a final decree involves the merits which had previously been settled by an interlocutory order, an appeal from the final decree brings the whole case before the court. *Crane* v. *De Camp, 7 C. E. Gr. 614.*

Where the final decree involves the point decided by the interlocutory decree, an appeal from the final decree may question

the correctness of the interlocutory decree on which it was founded. *Terhune* v. *Colton, 1 Beas. 312.*

An appeal from a final decree brings before the appellate court all interlocutory orders and decrees involving the merits. *Decker* v. *Ruckman, 1 Stew. Eq. 614.*

In the case last cited, the court held that the interlocutory decree of reference instructing the master, limiting his inquiry and the scope of his report, and necessarily affecting the merits, was reviewable, although exceptions had not been filed.

The evidence before the advisory master, as well as that subsequently taken, shows conclusively that the limitations in the decree of reference in this case were right.

The appellant contends that the directions for the accounting should have been broad enough to have included among the credits to be given him, the following items, viz. : $100 paid by him to the husband of respondent; $571.79 which he had paid on judgments against her husband ; $344.30 for tuition and board of a son of respondent, whom his father had sent to college; and the further sum of $325.12 paid in cash by appellant to the husband of respondent. It appears by the evidence that the appellant had no right to pay any of those items out of the moneys raised by mortgage on respondent's property, and neither of them should be credited in the accounting.

Before the master who was appointed to state the account, the appellant swore that the respondent knew these payments were to be made by him out of the moneys raised by mortgage, yet raised no objection ; but in his evidence before the advisory master (which the chancellor directed to be used at the accounting, in connection with the other proofs), he said he had but one conversation with the respondent about the matter, " when she said ' I think we had better give you a deed for that Englewood property ; we can save that, anyhow;' I said, ' Very well, that will be all right;' I have had no further interview with her, either before or after."

In her evidence, the respondent denies unequivocally that she ever authorized the appellant to borrow money on the property for any purpose. She says that she never directed him to pay

her husband's judgments, nor his debts of any kind, nor to give him any money. She further says she did not know that the mortgage had been given and the moneys paid until long after the transactions.

At the time of these transactions, the appellant knew that the relations between the respondent and her husband were not harmonious.

The decided preponderance of evidence upon which the order of reference was founded (which preponderance has not been changed by the subsequent proof), was in favor of the position of the respondent.

The decree of reference should not be disturbed. It properly limited the inquiry upon the accounting to credits for moneys paid by appellant upon the exchange of the properties therein mentioned, taxes paid, necessary expenses in procuring the loan, advertising and taking care of the Englewood property. These payments she has the benefit of, as owner of the property, which was directed to be reconveyed to her; and all those which were proved were allowed as credits.

There was an item stated as " commissions on exchange of properties, $115; " also, another item was claimed as " legal expenses, about same." These came within the limits of the reference, but they were not allowed. If this court had the power to review these in the absence of exceptions to the master's report, it would be found that they were not proved, the evidence offered being hearsay. But these are not reviewable, because, being within the language of the reference, and presented to the master, their non-allowance should have been the basis of exceptions to the report. After confirmation of report without objection, it is too late to ask the appellate court for relief as to these items.

On appeal from final decree, the appellate court will decide whether the decree of reference prescribing the principle to govern the accounting be right, and will remit to have items allowed which have been improperly excluded by the terms of the reference; but items clearly within the principle of the refer-

ence, not allowed by master, where exceptions to the report have not been filed, will not be considered.

The decree should be affirmed, with costs.

*Decree unanimously affirmed.*